United States District Court
Southern District of Texas
**ENTERED**
November 08, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Stacy Meadows, | § | |
| *Plaintiff,* | § § § § | |
| v. | § § | Civil Action No. 4:23-cv-01536 |
| Costco Wholesale Corporation, | § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND ORDER

This is a premises liability suit. Plaintiff Stacy Meadows sued Costco Wholesale Corporation for injuries she sustained after falling from a wooden pallet used to display water bottle cases. *See generally* Dkt. 1. Costco filed a motion for summary judgment, asserting that Meadows has not raised a genuine issue of material fact that the pallet constituted an unreasonably dangerous condition. Dkt. 22. After carefully considering the motion, Meadows's response, Dkt. 23, Costco's reply, Dkt. 24, Meadows's supplemental brief, Dkt. 26, the record, and the applicable law, the Court grants Costco's motion for summary judgment.

## Background

On March 27, 2021, Meadows was shopping at a Costco store. Dkt. 22-1 at 4. She approached a pallet displaying stacked water bottle cases. *Id.*

According to her deposition, the display was partially depleted, such that some of the merchandise was pushed back from the edge of the pallet. *See id.* Meadows looked around but did not see anyone to help her. *Id.* Two or three times, she stepped onto the pallet and safely retrieved a case of water, placing it in her cart. *Id.* at 5. On the next attempt to retrieve a case from the pallet, Meadows's foot caught on one of the holes in the pallet, causing her to fall and sustain injuries. *See id.* at 4; Dkt. 23-2 at 8-9.

Meadows sued Costco in state court, Dkt. 1-1, and Costco removed the case to federal court based on diversity jurisdiction. Dkt. 1 at 2-3. The parties agree that Texas law applies to the premises liability claim.

After the motion filing deadline expired, Costco filed a motion for leave to file a motion for summary judgment based on the recent decision in *Pay & Save, Inc. v. Canales*, 691 S.W.3d 499 (Tex. 2024) (per curiam). Dkt. 18. This Court granted Costco's request for leave. Dkt. 21 at 5. Costco then filed its motion for summary judgment, Dkt. 22, to which Meadows responded, Dkt. 23, and Costco replied, Dkt. 24. The Court then issued an order authorizing Meadows to submit supplemental briefing to address whether Costco had notice of the depleted pallet, Dkt. 25, and Meadows subsequently filed her brief. Dkt. 26. Costco's motion is ripe for resolution.

## Standard of Review

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). When resolving a motion for summary judgment, the court must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted).

## Analysis

As indicated above, Costco was granted leave to move for summary judgment based on the Texas Supreme Court's recent decision in *Pay & Save, Inc. v. Canales*, 691 S.W.3d 499 (Tex. 2024) (per curiam). The parties dispute whether *Pay & Save*'s analysis negates Meadows's premises liability claim.

Under Texas law, a premises liability claim requires proof that "(1) a premises owner had actual or constructive knowledge, (2) of some

3

unreasonably dangerous condition on the premises (3) but the owner did not exercise reasonable care to reduce or to eliminate the unreasonable risk of harm, (4) which proximately caused the plaintiff's personal injuries." *Pay & Save, Inc.*, 691 S.W.3d at 502 (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)). As in *Pay & Save*, the primary element at issue is the second one: whether the complained of condition was unreasonably dangerous. *See id.*; Dkt. 22 at 6. But the parties also debate the first element: whether Costco knew about the condition when the incident occurred.

I. **The *Pay & Save* framework**

In *Pay & Save*, the Texas Supreme Court held that the evidence presented at trial was legally insufficient to show that a wooden pallet used to display a box of watermelons at a grocery store was unreasonably dangerous. *See* 691 S.W.3d at 501. There, the plaintiff previously approached the display hundreds of times without incident. *Id.* at 502. On this occasion, his boot caught in the pallet's open side, causing him to fall and break his arm. *Id.* A jury awarded him $6 million. *Id.* at 501. The court of appeals found the evidence was legally but not factually sufficient to support recovery, thus remanding for a new trial. *Id.* But the Texas Supreme Court held that the pallet was not an unreasonably dangerous condition as a matter of law. *Id.*

First, the Court noted that whether a condition is unreasonably dangerous is often a fact question. *Id.* at 502 (citing *United Supermarkets, LLC*

4

*v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022)). Nevertheless, the Court emphasized its repeated holdings "that common or innocuous hazards are not unreasonably dangerous as a matter of law." *Id.* & n.1 (collecting cases). The mere fact that a condition caused an injury does not, alone, mean that the condition is unreasonably dangerous. *See id.* (citing *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87 (Tex. 2023)). This is because "landowners are neither insurers of a visitor's safety nor required to make a premises foolproof." *Id.* at 503.

Second, the Court illuminated what evidence is necessary to show that a common condition is unreasonably dangerous. In the Court's words, a plaintiff must show "more than a mere possibility of harm." *Id.* Instead, the Court demanded "[a]t a minimum … sufficient evidence of prior accidents, injuries, complaints, reports, regulatory noncompliance, or some surrounding circumstance that transformed the condition into one measurably more likely to cause injury." *Id.* And the "absence of such evidence will lead to a conclusion that the condition complained of is an everyday hazard." *Id.*

Turning to the evidence, the Court concluded that the pallet was not unreasonably dangerous. There was a "complete absence of any evidence of prior complaints, reports, or injuries from pallets like this one—and not just at Pay and Save's 150 stores, but also at … any other grocery store." *Id.* (quotation omitted). Furthermore, the evidence showed no code, law, or

regulation prohibiting or restricting the use of wooden pallets. *Id.* And the plaintiff "failed to adequately plead that some surrounding circumstance transformed the pallet's open side into a condition measurably more likely to cause injury." *Id.*

The Court further rejected reliance on the testimony of plaintiffs' experts. *See id.* As the Court acknowledged, "[e]xpert testimony may be offered to show that an item's use, placement, or arrangement increased the risk of harm." *Id.* (citing *Christ*, 664 S.W.3d at 91 n.5). But such testimony cannot raise a fact issue "when undisputed, material facts show otherwise." *Id.* In addition, a landowner's mere "knowledge of safer, feasible alternative designs, without more, is not evidence that a premises owner knew that a condition was unreasonably dangerous." *Id.*

Beyond that, the Court found that the experts' opinions were "nonprobative and conclusory." *Id.* & n.2. In particular, one expert asserted that the pallet hazard was known in the industry and that the type of injury had occurred before. *Id.* at n.2. But he provided no examples supporting that claim. *Id.*

Finally, the Court concluded that the court of appeals erred by treating a "mere possibility of harm" as sufficient to show "an unreasonable risk of harm." *See id.* at 504. The record at most reflected a "mere possibility of harm" as the pallet was a common condition, "a type of hazard that we encounter—

6

and avoid—every day by exercising a modicum of common sense, prudence, and caution." *Id.* In fact, the plaintiff had previously approached the pallet without issue. And the plaintiff's failure to exercise caution when he later fell did not make the pallet unreasonably dangerous. *See id.* As a result, the Court reversed the court of appeals' judgment and rendered a take-nothing judgment on the premises liability claim. *See id.*

II. **Meadows's evidence fails to show that the wooden pallet was unreasonably dangerous and that Costco had notice of the alleged condition.**

Costco invokes *Pay & Save*'s logic, arguing that "common place items, such as pallets in a grocery store, do not constitute unreasonably dangerous conditions as a matter of law …." Dkt. 22 at 5. Because this case likewise involves a wooden pallet displaying products, Costco argues that *Pay & Save* favors the same conclusion that Meadows's premises liability claim is legally barred. *See id.* at 8.

Meadows responds that this case differs from *Pay & Save*, contending that the unreasonable danger arose not from the mere use of pallets, but from their "specific arrangement" of "being depleted." *See* Dkt. 23 at 2-3, 6. Whereas the *Pay & Save* plaintiff caught his foot in the open side of a pallet, Meadows was injured when she allegedly was "compelled to climb onto a pallet" because she had "no safe alternative" to reach the merchandise that was not accessible from the front edge of the display. *See id.* at 2-3, 5, 8.

7

To the extent that Costco characterizes *Pay & Save*'s holding as a categorical rule that wooden pallets in grocery stores are not unreasonably dangerous, the Court disagrees. Rather, the question is whether the evidence from this specific incident, viewed in the light most favorable to Meadows, raises a genuine issue of material fact that the pallets posed an unreasonable danger and, if so, whether Costco knew of the danger. As detailed below, the answer to both inquiries is no.

### A. The record does not indicate that the pallet was unreasonably dangerous.

#### 1. Meadows has not shown any surrounding circumstance that made the pallet unreasonably dangerous.

As Costco rightly observes, Meadows adduces no evidence of prior accidents, injuries, complaints, or reports. Dkt. 22 at 10; Dkt. 24 at 2; *see generally* Dkt. 23. Under *Pay & Save*, this evidentiary gap undercuts characterizing the pallet as unreasonably dangerous. *See* 692 S.W.3d at 503. Although Meadows asserts that "there is sufficient evidence of … surrounding circumstances that transformed this pallet into one 'more likely to cause injury,'" the evidence does not support her position. *See* Dkt. 23 at 5-6 (citing *Pay & Save*, 692 S.W.3d at 503).

Much like the plaintiff in *Pay & Save*, Meadows's own safe navigation of the pallet display prior to injury undermines her claim of unreasonable risk. Costco rightly notes that Meadows interacted with the display safely multiple

8

times before she fell. *See* Dkt. 22 at 11-12; Dkt. 22-1 at 5; *see also Pay & Save*, 691 S.W.3d at 502 (plaintiff "had previously visited the location hundreds of times and had purchased watermelons without incident"). Meadows's failure to exercise "common sense, prudence, and caution" on the last occasion did not transform the pallet into an unreasonably dangerous condition. *See Pay & Save*, 691 S.W.3d at 504; *see also, e.g.*, *Jones v. Dollar Tree Stores, Inc.*, 2020 WL 7753719 at *4 (S.D. Tex. Dec. 10, 2020) (citing *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.) (prior use without incident, together with an absence of prior injuries and complaints, cuts against a finding of unreasonable risk of harm), *adopted by* 2020 WL 7714709 (S.D. Tex. Dec. 29, 2020).

Meadows's further assertion that she had "no safe alternative" but to step onto the pallet, Dkt. 23 at 3, is unavailing. For this question, Texas courts consider "[w]hether the invitee had reasonable alternatives other than to traverse areas where the condition was located." *Martin v. Chick-Fil-A*, 2014 WL 465851 at *4 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (citing *Parker v. Highland Park, Inc.*, 656 S.W.2d 512, 520 (Tex. 1978)). In *Martin*, a plaintiff exiting a restaurant tripped over a parking block while deviating from the pedestrian crosswalk to cross a busy drive-through lane. *Id.* at *1. The court reasoned that she could have waited for the crosswalk to clear, which she had done safely when entering. *Id.* at *5.

Here, Meadows offers no evidence negating the existence of reasonable alternatives, such as seeking assistance from a Costco employee. She testified that she "kind of looked to see if anybody could help [her] get some water. But there was no one available." *See* Dkt. 22-1 at 4. Conspicuously lacking, however, is any indication that she undertook efforts to locate a Costco employee who could assist her. The record therefore does not indicate that Meadows lacked alternatives to stepping on the pallet.

Moreover, Meadows offers no evidence that the pallet was inherently dangerous to step on, or that it was otherwise broken or defective. Courts look for defects or unusual details when determining if a condition is unreasonably dangerous. *See, e.g.*, *Garcia v. Wal-Mart Stores Texas, L.L.C.*, 2012 WL 6691131, at *6 (S.D. Tex. Dec. 21, 2012) (plaintiff did not allege or show "that the pallet was defective or unusual"); *see also, e.g.*, *McIntire*, 646 S.W.3d at 803 (nothing showed that the hazard in question was "unusual" compared to others of its kind); *Brinson Ford v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (unrailed portion of ramp that was "less than the height of an average step" did not pose an unreasonable risk of harm); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970) ("There was neither an allegation nor is there evidence that the rug was defective in any manner.").

Although Meadows testified that her "foot caught one of the holes in the pallet," Dkt. 22-1 at 4, she does not complain about the size or spacing of the

holes or the height of the pallet. Therefore, she "does not allege, and the evidence does not show, that the pallet was defective or unusual." *Garcia*, 2012 WL 6691131, at *6.

At bottom, evidence that Meadows was injured on a partially depleted merchandise display, without more about how the display itself increased her risk of falling, cannot automatically make the pallet an unreasonably dangerous condition. *Cf. Hatamieh v. Kroger Tex. LP*, 2018 WL 1014158, at *4 (N.D. Tex. Feb. 21, 2018) (plaintiff who presented no evidence other than her own testimony and the fact that she fell could not substantiate an unreasonably dangerous condition). Otherwise, "a grocery store and everything in and around it could be characterized as unreasonably dangerous." *Pay & Save*, 691 S.W.3d at 502 (citing *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006)).

### 2. Meadows's expert fails to raise a fact issue.

*Pay & Save* also negates Meadows's reliance on the expert opinion of Jason English to raise a fact issue. English's report asserts that retail businesses should place items in "fronted" displays to make products reasonably accessible to customers. *See* Dkt. 23-3 at 7-8 (report). Citing that report, Meadows maintains that this "recognized safety principle" ensures that retail customers will not need to climb on display shelves or pallets to reach merchandise. Dkt. 23 at 5-6 (citing Dkt. 23-3 at 7-8).

11

But English provides no support for his assertion that "fronted" displays are a "recognized safety principle in the retail industry." *See* Dkt. 23-3 at 7-8. And English mentions only the importance of preventing falls, generally, while offering no examples or statistics about falls caused *by pallets*. *See* Dkt. 23-3 at 5-6. Lacking supporting examples, his testimony about industry safety standards is "nonprobative and conclusory" and insufficient to show that the pallet display's use, placement, or arrangement increased the risk of harm. *See Pay & Save,* 691 S.W.3d at 503 & n.2.

      3.    <u>Costco's policies and procedures do not show that the pallet was unreasonably dangerous.</u>

Meadows also cites Costco's safety policies and procedures, claiming they substantiate that the pallet display posed an unreasonable danger.[1] *See* Dkt. 23 at 6-7; Dkt. 23-4 (employment agreement). In particular, she notes Section 13.6, regarding "Pallets," which instructs employees to "inspect pallets daily" and "remove empty pallets to the receiving area." Dkt. 23-4 at 4-5. Section 13.6 also states:

> Partial pallets of merchandise must be combined and restocked promptly to conserve pallets. In other words, pallets on the floor, which have been depleted of their merchandise by shoppers, should be consolidated and empty pallets removed to receiving.

---

[1] Meadows's expert's testimony adds nothing on this point beyond what Meadows herself asserts. *See* Dkt. 23-3 at 7; *supra* Part II.B.

12

Dkt. 23-4 at 5. Relatedly, a Costco employee testified that she conducted "floor walks" to look for "broken pallets," pallets that were "leaning," and "empty or depleted" pallets. Dkt. 23-5 at 19-20 (deposition of Lisette Romo). Costco replies that its store policies at most address a different element—notice—and not whether the pallets, depleted or not, were unreasonably dangerous. *See* Dkt. 24 at 3-4.

The cited portions of Costco's written policy focus on the need to remove *empty* pallets. Dkt. 23-4 at 5. Although it directs employees to consolidate pallets "which have been depleted of their merchandise by shoppers," the policy indicates that the purpose of that exercise is to "conserve pallets." *Id.* Nothing in the policy states that a partially depleted pallet itself posed a hazard to customers. *Compare with, e.g., Grey Wolf Drilling Co., L.P. v. Boutte*, 154 S.W.3d 725, 738-39 (Tex. App.—Houston [14th Dist.] 2004) (safety manual explicitly identifying drilling mud as a "slipping hazard" or "hazard" constituted evidence that defendant knew the mud could "create an unreasonably dangerous condition"), *vacated by* 2005 WL 8189150 (Tex. Mar. 4, 2005) (granting review and vacating decision pursuant to settlement).

Meadows further cites the deposition of a Costco employee who testified that she conducted "floor walks" to look for unsafe issues, including "empty or depleted" pallets. Dkt. 23-5 at 19-20 (Romo deposition). Even if this suffices to suggest that Costco viewed depleted pallets as a safety issue, it nonetheless

13

fails to indicate that the condition that Costco sought to avoid was *unreasonably dangerous*. Meadows cites no authority, and the Court has found none, supporting that view. As a policy matter, Meadows's position risks discouraging landowners from implementing policies to address all sorts of minor issues, for fear that adopting those policies would create a basis for liability where none otherwise existed.

Regardless, Texas law supports Costco's view that the cited policy does not address whether the pallet display is unreasonably dangerous. In *Garcia*, for example, this Court addressed and rejected a similar contention. *See* 2012 WL 6691131, at *6-7. There, a store policy pertained to the removal of empty pallets. *Id.* Relying on Texas Supreme Court precedent, this Court found the policy irrelevant because it did not address the "risk at issue," namely a merchandise-laden pallet. *See id.* at *6-7 (citing *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 512, 514 (Tex. 2008)).

Here, the "risk at issue" is the danger of a customer falling on a partially depleted pallet. Costco's policy, however, covers restocking and replenishing pallets and removing empty ones "to conserve pallets." Dkt. 23-4 at 4-5. The only safety concerns addressing the pallet's condition are "broken pallets (i.e. missing chunks of wood, broken boards)" and "loose nails or sharp edges." *Id.* at 4. Whereas the policy warns employees not to "walk over an empty pallet on the floor," *see id.* at 5, it does not contemplate that an unbroken pallet, even

14

if partially depleted, posed a safety risk to customers. Therefore, the policy "is not relevant evidence of an unreasonable risk and is insufficient to create a fact issue." *See Garcia*, 2012 WL 6691131, at *7; *see also Aguilar*, 251 S.W.3d at 514 (explaining that "nothing in the manual remotely suggests" that the complained-of condition presents an unreasonable risk of harm).

## B. Meadows offers no evidence that Costco had notice of the alleged hazard.

Even if the depleted display constituted an unreasonable danger, Meadows proffers no evidence that Costco knew that the pallet was, in fact, partially depleted when she stepped on it and fell. Because Costco raised its lack of notice in a reply brief, Dkt. 24 at 3-4, the Court gave Meadows an opportunity to supplement the record with evidence on this issue. Dkt. 25, 26. Yet even the supplemented record fails to raise a fact question on the notice element of Meadows's claim.

To prevail on a premises liability claim, a plaintiff must show that "a premises owner had actual or constructive knowledge" of the condition. *Pay & Save*, 691 S.W.3d at 502. "Constructive notice is a substitute in the law for actual knowledge," which can be "established by showing that the condition had existed long enough for the owner … to have discovered it upon reasonable inspection." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102-03 (Tex. 2000). "The rule requiring proof that a dangerous condition existed for some length of

time before a premises owner may be charged with constructive notice is firmly rooted in [Texas] jurisprudence." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815-16 (Tex. 2002). "What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented." *Id.* at 816.

Meadows cites the rule, but she offers no evidence that the pallet was depleted long enough that Costco should have discovered it during a floor walk. Her testimony that the incident occurred "in the evening … [p]robably close to 5:00, 5:30, 6:00 o'clock" is too imprecise to raise an issue of fact. *See* Dkt. 26-3 at 4 (deposition of Stacy Meadows). That a Costco employee performed a safety floor walk during that hour-long window fails to show how long the pallet was depleted or that Costco should have discovered it. *See* Dkt. 26-2 at 4-5 (Romo deposition); Dkt. 26-4 at 2, 5 (March 27, 2024, daily floor walk and safety inspection record). "An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it." *Reece*, 81 S.W.3d at 816.

Meadows does not attempt to show what *would* constitute a "reasonable time" to discover the condition on "the facts and circumstances presented." *See id.* This is fatal to her claim because Texas law requires proof of how long the hazard was there, to avoid creating strict liability for premises owners. *See id.*

16

In sum, Meadows has not raised a fact issue that Costco had notice that the pallet display was depleted or that the display was unreasonably dangerous. Costco is therefore entitled to summary judgment on the premises liability claim.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendant Costco Wholesale Corporation's motion for summary judgment (Dkt. 22) is **GRANTED**, and that Plaintiff Stacy Meadows's premises liability claim be **DISMISSED** with prejudice.

Signed on November 8, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge